UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# 23-20417-CR-WILLIAMS/REID

Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 2
18 U.S.C. § 1031(a)
18 U.S.C. § 982(a)(7)

FILED BY _____ KAN _____ D.C.

Oct 24, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES OF AMERICA

v.

KENIA VALLE BOZA,

              Defendant.

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.      The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare was subdivided into multiple program "parts." Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health

agencies.  Medicare Part B covered, among other things, medical services provided by physicians, medical clinics, laboratories, and other qualified health care providers, such as office visits, minor surgical procedures, and laboratory testing, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.  Medicare Part C, also known as "Medicare Advantage," provided beneficiaries with the option to receive their Medicare benefits through private managed health care plans, including health maintenance organizations and preferred provider organizations.  Health care providers, whether under Medicare Part A, B, or C, that provided and supplied items and services to beneficiaries were referred to as "providers."

3.      Medicare and Medicare Advantage were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

4.      Medicare Advantage plans provided beneficiaries with the same services provided by an original fee-for-service Medicare plan, in addition to mandatory supplemental benefits and optional supplemental benefits.

5.      To receive Medicare Advantage benefits, a beneficiary was required to enroll in a managed care plan operated by a private company that had entered into a contract with CMS to offer one or more Medicare Advantage plans.  Those companies were often referred to as Medicare Advantage Organizations ("MAOs").  A beneficiary's enrollment in a Medicare Advantage plan was voluntary.

6.      Rather than reimbursing based on the extent of the services provided, as in original Medicare, CMS made fixed, monthly payments to an MAO for each Medicare beneficiary enrolled in one of the MAO's plans, regardless of the services rendered to the beneficiary that month or the cost of covering the beneficiary's health benefits that month.  These payments were referred to as "capitation" payments.  CMS periodically adjusted the capitation payment associated with each

beneficiary. CMS determined a beneficiary's capitation payment based on a variety of factors, including the beneficiary's age and gender and whether the beneficiary resided in an inpatient facility.

7.      In addition, the size of a capitation payment was adjusted based on the beneficiary's health status. CMS generally made larger capitation payments for beneficiaries with more serious medical conditions. CMS determined a beneficiary's health status in part based on medical diagnoses submitted by the MAO sponsoring the beneficiary's Medicare Advantage plan. When a provider treated a beneficiary, the provider reported the beneficiary's diagnoses to the MAO. The MAO, in turn, reported these diagnoses to CMS via interstate wire. For the period on or after October 16, 2002, through September 30, 2015, diagnoses were reported to CMS using codes specified in the Ninth Edition of the International Classification of Diseases ("ICD-9 codes"). For the period on or after October 1, 2015, diagnoses were reported to CMS using codes specified in the Tenth Revision of the International Classification of Diseases ("ICD-10 codes"). CMS used these diagnosis codes to adjust the capitation payment associated with the beneficiary.

8.      MAOs and providers often used administrative employees called "coders" to help translate details from a patient's medical records, such as the patient's medical chart or progress notes, into the codes that MAOs submitted to CMS. Coders translated the medical diagnoses that were made by providers into the codes that the plans submitted to CMS.

9.      CMS grouped certain diagnosis codes into categories of clinically related medical diagnoses called Hierarchical Condition Categories ("HCCs"). The diagnosis codes that CMS grouped into HCCs generally included major, severe, and chronic conditions. CMS used the HCCs triggered by the diagnosis codes submitted by MAOs as well as demographic data to calculate payments for each beneficiary. This process was known as "risk adjustment."

10.     These risk adjustment payments by CMS to MAOs were made in the year after a Medicare beneficiary was treated by a provider.  The year that a beneficiary was treated by a provider and diagnosed with risk-adjusting conditions was known as the "service year."  The year that CMS made the risk-adjusted payments based on those diagnoses (the following year) was known as the "payment year."  CMS made these payments to the MAO on a per-member-per-month basis via interstate wire.

11.     CMS required that, for a diagnosis to be submitted for risk adjustment purposes, the diagnosis needed to be documented in the beneficiary's medical record, and it needed to be documented as a result of a face-to-face encounter with an acceptable provider type.  For outpatient encounters at medical clinics, CMS provided a list of acceptable provider types that could make and document risk adjustment diagnoses, which included, among others, medical doctors, certain types of nurses, and physician assistants.  A coder was not an acceptable provider type to make and document risk adjustment diagnoses.

12.     MAOs were required to operate their Medicare Advantage plans in compliance with the requirements of their contracts with CMS, applicable federal law and regulations, and CMS's policies.  Furthermore, the MAOs were required to certify to CMS that the risk adjustment data submitted to CMS was accurate, complete, and truthful.

**Certain Risk-Adjusting Medical Diagnoses**

13.     "Other Hemoglobinopathies" was a risk-adjusting diagnosis that was reported to CMS using ICD-9 code 282.7 and ICD-10 code D58.2.  Other Hemoglobinopathies consisted of inherited blood disorders that affected red blood cells.  Specifically, Other Hemoglobinopathies involved abnormal production or structure of hemoglobin, the protein in red blood cells that carried oxygen.  Symptoms of Other Hemoglobinopathies included anemia, weakness and fatigue, and

4

shortness of breath.

14.     "Disorder of Carbohydrate Metabolism, Unspecified" was a risk-adjusting diagnosis that was reported to CMS using ICD-9 code 271.9 and ICD-10 code E74.9.  Disorder of Carbohydrate Metabolism, Unspecified was a disorder that affected the body's ability to break down carbohydrates.  Symptoms of Disorder of Carbohydrate Metabolism, Unspecified included weakness, sweating, confusion, and kidney stones.

### The Defendant and Relevant Entities

15.     Defendant **KENIA VALLE BOZA**, a resident of Miami-Dade County, was certified by the American Association of Professional Coders ("AAPC") as, among others, a Certified Professional Coder.  **KENIA VALLE BOZA** was an employee of Pasteur Medical Center, Inc., and its related entities (collectively, "Pasteur"), and held various titles, including Coding Manager (from in or around 2015, through in or around 2016) and Medicare Risk Adjustment Manager (from in or around 2016, through in or around 2017).  **KENIA VALLE BOZA** was employed by HealthSun Health Plans, Inc. ("HealthSun"), as the Director of Medicare Risk Adjustment Analytics from in or around August 2017, through in or around January 2020.

16.     HealthSun was a company organized under the laws of the State of Florida whose principal place of business was Miami, Florida.  HealthSun was an MAO that contracted with CMS to operate one or more Medicare Advantage plans serving beneficiaries in Miami-Dade and Broward Counties.

17.     Pasteur was a group of companies that operated several medical clinics in Miami-Dade and Broward Counties.  Beginning in or around November 2016, Pasteur was owned by HealthSun.  At all relevant times, Pasteur contracted with HealthSun to provide health care services to beneficiaries enrolled in HealthSun's Medicare Advantage plans.  Pasteur, in turn,

contracted with primary care and other physicians to provide health care services to beneficiaries enrolled in HealthSun's Medicare Advantage plans.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.      Paragraphs 1 through 17 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around October 2015, and continuing through in or around January 2020, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

### KENIA VALLE BOZA,

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury to commit offenses against the United States, that is:

a.      to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare Advantage, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b.      to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations,

6

and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3.      It was a purpose of the conspiracy for **KENIA VALLE BOZA** and her co-conspirators to unlawfully enrich themselves and HealthSun by, among other things: (a) falsely diagnosing and causing others to falsely diagnose beneficiaries in HealthSun's Medicare Advantage plans with risk-adjusting conditions without regard to whether the beneficiary actually had the conditions; (b) having coders enter risk-adjusting conditions directly into the medical records of beneficiaries enrolled in HealthSun's Medicare Advantage plans; (c) having coders use the login credentials assigned to Pasteur's physicians to access Pasteur's electronic medical record ("EMR") system and enter risk-adjusting conditions directly into the medical records of beneficiaries enrolled in HealthSun's Medicare Advantage plans, falsely and fraudulently making it appear that the physicians were diagnosing the beneficiaries with those risk-adjusting conditions; (d) causing HealthSun to submit false and fraudulent diagnosis codes to CMS based on those risk-adjusting conditions, thereby fraudulently increasing the payments made by CMS to HealthSun; (e) concealing the submission of the false and fraudulent diagnosis codes; and (f) continuing to receive and increase the amount of compensation from HealthSun by falsely and fraudulently raising the amount that CMS paid to HealthSun.

**Manner and Means**

The manner and means by which defendant **KENIA VALLE BOZA** and her co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

4.      HealthSun enrolled vulnerable beneficiaries in the Southern District of Florida in Medicare Advantage plans for health care services provided by Pasteur and others.

5.      **KENIE VALLE BOZA** supervised and directed the activities of Pasteur's coders and others in obtaining beneficiary information and preparing encounter information about beneficiaries' medical conditions that were submitted to CMS on behalf of HealthSun.

6.      **KENIA VALLE BOZA** and others obtained the login credentials assigned to Pasteur's physicians to wrongfully access Pasteur's EMR system as the physicians, rather than with their own login credentials.

7.      **KENIA VALLE BOZA** and others entered false and fraudulent information into beneficiaries' medical records to increase reimbursement from CMS to HealthSun.

8.      **KENIA VALLE BOZA** and others falsely and fraudulently entered, and caused others to enter, diagnoses of Other Hemoglobinopathies and Disorder of Carbohydrate Metabolism, Unspecified into the medical records of beneficiaries enrolled in HealthSun's Medicare Advantage plans based on those beneficiaries having an elevated HbA1c test result, knowing that an elevated HbA1c test result was not a proper basis for diagnosing either of those conditions. **KENIA VALLE BOZA** and others entered these diagnoses into the beneficiaries' medical records through Pasteur's EMR system, regardless of whether the beneficiary actually had the conditions.

9.    **KENIA VALLE BOZA** and others caused Pasteur coders to falsely and fraudulently enter tens of thousands of other risk-adjusting diagnoses directly into the medical records of beneficiaries enrolled in HealthSun's Medicare Advantage plans.  The Pasteur coders entered these diagnoses into the beneficiaries' medical records, through Pasteur's EMR system, while logged in with their own credentials.

10.    **KENIA VALLE BOZA** and others caused Pasteur coders to obtain and use Pasteur physicians' credentials to log in to Pasteur's EMR system as the physicians and falsely and fraudulently enter tens of thousands of risk-adjusting diagnoses directly into the medical records of beneficiaries enrolled in HealthSun's Medicare Advantage plans.   These risk-adjusting diagnoses appeared to have been made and documented by the physicians when, in truth and fact, the risk-adjusting conditions were entered into beneficiaries' medical records by coders, often days or weeks after the physician saw the beneficiary.

11.    **KENIA VALLE BOZA** and others caused to be submitted to HealthSun, and, in turn, CMS, false and fraudulent diagnosis codes for beneficiaries enrolled in HealthSun's Medicare Advantage plans.  The false and fraudulent diagnoses included, among others, Other Hemoglobinopathies and Disorder of Carbohydrate Metabolism, Unspecified.

12.    The false and fraudulent diagnoses caused CMS to increase the capitation payments it made to HealthSun via interstate wire.

13.    In total, **KENIA VALLE BOZA** and others caused to be submitted to HealthSun, and, in turn, CMS, false and fraudulent diagnosis codes that increased Medicare's payments to HealthSun by more than $12 million.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-3
### Wire Fraud
### (18 U.S.C. §§ 1343 and 2)

1.      Paragraphs 1 through 17 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around October 2015, and continuing through in or around January 2020, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

### KENIA VALLE BOZA,

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that such pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds for the purpose of executing such a scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Scheme and Artifice

3.      The Purpose of the Conspiracy section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the purpose of the scheme and artifice.

### The Scheme and Artifice

4.      The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

10

**Use of Wires**

5.      On or about the dates set forth as to each count below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**KENIA VALLE BOZA,**

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that such pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, as set forth below:

| Count | On or About Date | Description of Interstate Wire |
|-------|------------------|-------------------------------|
| 2 | 11/30/2018 | Electronic funds transfer of approximately $78,838,112 initiated from outside the state of Florida and transmitted to JPMorgan Chase in the Southern District of Florida for risk-adjusted capitated payments relating to service year 2017<br><br>(CMS risk-adjusted capitation payment to HealthSun) |
| 3 | 2/1/2019 | Electronic funds transfer of approximately $89,761,645 initiated from outside of the state of Florida and transmitted to JPMorgan Chase in the Southern District of Florida for risk-adjusted capitated payments relating to service year 2018<br><br>(CMS risk-adjusted capitation payment to HealthSun) |

In violation of Title 18, United States Code, Sections 1343 and 2.

11

<u>**COUNTS 4-6**</u>
**Major Fraud Against the United States**
**(18 U.S.C. §§ 1031(a) and 2)**

1.      Paragraphs 1 through 17 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around October 2015, and continuing through in or around January 2020, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**KENIA VALLE BOZA,**

did knowingly execute, and attempt to execute, a scheme and artifice with the intent to defraud the United States and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that such pretenses, representations, and promises were false and fraudulent when made, in a contract, subcontract, subsidy, guarantee, insurance, and other form of Federal assistance, the value of such contract, subcontract, subsidy, guarantee, insurance, and form of Federal assistance, and any constituent part thereof, being $1,000,000 or more.

<u>**Purpose of the Scheme and Artifice**</u>

3.      The Purpose of the Conspiracy section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the purpose of the scheme and artifice.

<u>**The Scheme and Artifice**</u>

4.      The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**Acts in Execution or Attempted Execution of the Scheme and Artifice**

5.        On or about the dates set forth as to each count below, in Miami-Dade and Broward

Counties, in the Southern District of Florida, and elsewhere, the defendant, **KENIA VALLE**

**BOZA**, did knowingly execute, and attempt to execute, a scheme and artifice with the intent to

defraud the United States and to obtain money and property by  means of materially false and

fraudulent pretenses, representations, and promises, knowing that the pretenses, representations,

and promises were false and fraudulent when made, in a contract, subcontract, subsidy, guarantee,

insurance, and other form of Federal assistance, the value of such contract, subcontract, subsidy,

guarantee, insurance, and form of Federal assistance, and any constituent part thereof, being

$1,000,000 or more, through the following executions and attempted executions of the scheme and

artifice:

| Count | Beneficiary | Description of False and Fraudulent Diagnosis | Approx. Date Diagnosis Entered into Medical Record | Approx. Date Diagnosis Code Submitted to Medicare |
|-------|-------------|-----------------------------------------------|----------------------------------------------------|---------------------------------------------------|
| 4 | E.R. | E74.9 Disorder of Carbohydrate Metabolism, Unspecified | 6/7/2017 | 6/15/2017 |
| 5 | S.Q. | E74.9 Disorder of Carbohydrate Metabolism, Unspecified | 6/20/2017 | 6/30/2017 |
| 6 | M.G. | E74.9 Disorder of Carbohydrate Metabolism, Unspecified | 6/7/2017 | 9/15/2017 |

In violation of Title 18, United States Code, Sections 1031(a) and 2.

**FORFEITURE ALLEGATIONS**
**(18 U.S.C. § 982(a)(7))**

1.        The allegations of this Indictment are re-alleged and by this reference fully

incorporated herein for alleging forfeiture to the United States of certain property in which the

defendant, **KENIA VALLE BOZA**, has an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Sections 1343 and/or 1349, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

     a.  cannot be located upon the exercise of due diligence;

     b.  has been transferred or sold to, or deposited with, a third party;

     c.  has been placed beyond the jurisdiction of the court;

     d.  has been substantially diminished in value; or

     e.  has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 982(a)(7) and (a)(4), and the procedures set forth in Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b).

A TRUE BILL

_____
FOREPERSON

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
JOHN (FRITZ) SCANLON
ASSISTANT CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

15

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

**CASE NO.:** _____

**v.**

KENIA VALLE BOZA,

_____ /
Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
☒ Miami   ☐ Key West   ☐ FTP
☐ FTL   ☐ WPB

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3.  Interpreter: (Yes or No) No_____
    List language and/or dialect: _____

4.  This case will take __10__ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                    (Check only one)
    I     ☐ 0 to 5 days                ☐ Petty
    II    ☒ 6 to 10 days               ☐ Minor
    III   ☐ 11 to 20 days              ☐ Misdemeanor
    IV    ☐ 21 to 60 days              ☒ Felony
    V     ☐ 61 days and over

6.  Has this case been previously filed in this District Court? (Yes or No) No_____
    If yes, Judge _____ Case No. _____
7.  Has a complaint been filed in this matter? (Yes or No) No_____
    If yes, Magistrate Case No. _____
8.  Does this case relate to a previously filed matter in this District Court? (Yes or No) No_____
    If yes, Judge _____ Case No. _____
9.  Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No_____
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No_____
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No_____
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No_____

By: _____
_fe_ JOHN SCANLON
DOJ Trial Attorney
Court ID No.   A5502516

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**      **KENIA VALLE BOZA**

**Case No:** _____

Count #:   1

    Title 18, United States Code, Section 1349

    Conspiracy to Commit Health Care Fraud and Wire Fraud
* **Max. Term of Imprisonment:**    **10 years**
* **Mandatory Min. Term of Imprisonment (if applicable):**   **N/A**
* **Max. Supervised Release:**    **3 years**
* **Max. Fine:**    **$250,000 or twice the gross gain or loss from the offense**

Counts #:   2 – 3

    Title 18, United States Code, Section 1343

    Wire Fraud
* **Max. Term of Imprisonment:**    **20 years as to each count**
* **Mandatory Min. Term of Imprisonment (if applicable):**   **N/A**
* **Max. Supervised Release:**    **3 years as to each count**
* **Max. Fine:**    **$250,000 or twice the gross gain or loss from the offense**

Counts #:   4 – 6

    Title 18, United States Code, Section 1031(a)

    Major Fraud Against the United States
* **Max. Term of Imprisonment:**    **10 years as to each count**
* **Mandatory Min. Term of Imprisonment (if applicable):**   **N/A**
* **Max. Supervised Release:**   **3 years**
* **Max. Fine:**   **$10 million**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**